Good morning, Counsel. Good morning. My name is John Williams. I'm here on behalf of Appellant Riverside Sheriffs Association. I'm happy to defer to the Court on how the order in which it would like these two consolidated appeals argued. There is an appeal, obviously, by my client and Mr. Woodson's separate attorneys. Unless either of my colleagues disagree, let's do the cross appeal second. Let's move forward with the association's claim first, please. Very well. Then it's my intent to reserve five minutes of my time for rebuttal, and I'll try and monitor that. Thank you. Thank you. Let me ask you, on the cross appeal, who's going to be arguing that? I will be arguing that as a respondent for RSA. I understand. Within the 15 minutes, though, right? Well, that's what I'm asking. There's no separate time for that, I don't think, so just kind of keep that in mind. All right. All right. Very well. Thank you, Your Honor. I'll use my time this morning to put a finer point on two key issues, the restatement and front pay remedies and the lack of mitigation of those remedies. Now, with respect to reinstatement, that may be a preferred equitable remedy in the law, but it has to be feasible, and it cannot be contrary to any factual findings previously made by the jury. What evidence was put into the record by the association that suggested this is not feasible? The people that were previously in conflict with Mr. Teutcher no longer work there, and I didn't see anything that suggested that there was inevitably permanently no job, and I think that's why the district judge put the front pay as a stick, basically, to move this along. The front pay stops as soon as the job appears. Well, I'll move to that feasibility issue. Okay. The court has to make specific findings on those two issues that you just addressed. One is, was there a same or similar position available? In this case, the evidence before the district court was that many of the tasks that Teutcher had previously handled were now handled by outside counsel who weren't employees of RSA anymore. And then with respect to this hostility element, I'm not sure how to see it. You're saying that the burden is on the court to show that? The court makes a finding, but whose burden is it to show that there is no job possibility? That would be on RSA. Okay. And your argument is that what evidence shows that? The evidence before the court was that the position was no longer being handled by somebody like the position that Teutcher previously had. So they outsourced it, but that doesn't mean they didn't outsource it, right? Can I ask, though, Judge Smith, can I just jump in? I thought that the district court ruled that you were – your client, rather – you had been untimely in submitting that evidence, and so the court wasn't going to consider that. Am I wrong? On the evidence you just mentioned in response to Judge Smith's question. There was an objection made to a declaration that had been submitted by Mr. Drott that dealt with that issue, but there was no ruling by the court that it was untimely. There were objections that were made. It was never rejected by the district court, and we don't know if the court relied on it or not. But wasn't it submitted after the ruling? It was submitted after the court had already determined this issue, right? It was submitted after the hearing but before the judgment had been entered. But had the court – when you say judgment had been entered, had the court expressed what its opinion was going to be or ruling was going to be? It had issued its orders on the post-trial motions including this issue. But I guess my more fundamental point is the court did not make any findings with respect to feasibility. This court in Traxler said you have to make those findings. It simply stated the standards. It said it's a preferred remedy, and it said you have to find that the same or the similar position is available and that there's no hostility there. But the court never actually made those findings. If you look at the 14 lines of analysis that the court supplies with respect to this issue, it does nothing more than simply state the standards. So there is no finding with respect to the availability of a same or similar position, irrespective of the timeliness of the Drott Declaration. And with respect to the hostility issue, let me say this. You have a jury here that found intentional retaliatory conduct, malice, and assessed punitive damages. You had a district court judge who separately made a finding of retaliatory animus. This is a case where malice was found to exist. It's dripping wet with hostility between the parties. About whom the malice was found, they're not there anymore, right? Well, but this is where we're left to guess. In the absence of any findings made by the district court on this issue, this court should not guess whether the hostility exists or whether those people are there or not there anymore. There simply were not the requisite findings made with respect to the feasibility. Counsel, let me ask you, can I ask you, just what case in particular are you relying on for the notion that the district court has to make affirmative feasibility findings in order to order reinstatement? What's your best case for that proposition? The Traxler case says that at 596F3rd, page 1012. Pollard, the high court in Pollard certainly said that you can have reinstatement, but again, you have to have these predicate findings that are made before a court can order reinstatement. Now, before we get to reinstatement, we have to also recognize that we have a jury finding in this case with respect to the amount of damages. Toitra came before this jury and said, as to my back pay and as to my future pay, here's my claim. And this jury was instructed specifically at jury instruction number nine to consider all of the evidence to determine what Toitra's make whole damages would be. And part of that finding was a predicate finding that had to be made with respect to whether the jury believed it would be reasonably certain that his employment would have continued. It's a general verdict, though, wasn't it? That's true. So we are left to speculate what the jury considered in arriving at its decision. If there were subparts to it that were contradictory to what you're talking about, I would get your point. But how do you get where you want to since there was a general verdict? It's a fair question. And it certainly would be easier if it was a special verdict form. All the parties agreed on this general verdict form. But what we know is this. Going into this case, Toitra claimed somewhere in the range of about 1.6 to 1.9 million in compensatory losses. That's past compensatory damages and future compensatory damages. Now, we don't need to reverse engineer the jury's verdict to know that this jury awarded Toitra less than what he claimed in terms of those compensatory losses. They made a determination, as is their sole province, to say, look, we think you're made whole by this $457,000 amount. Now, one could argue from that that they said, we're just going to give you your past lost earnings and we're not going to give you any future earnings. And if that's the case, then clearly the district court judge sitting in equity cannot disregard that factual finding. Why? Because it's predicated on exactly what the jury was asked to do, and that is to make a determination whether Toitra would have been continued, his employment would have continued with RSA. Do you think that he essentially elected a remedy by submitting that question to the jury without objecting to that submission? I think that's the effect of it. And let me give a contrast to the court where you could see where you could have a situation where you could have the jury make a determination as to back pay and then the judge separately make a determination with respect to front pay. If the court looked at the Smith case, which we cited, the Tenth Circuit case, in that case it was a federal claim under the Family Leave Act. And in that case the issue went before the jury with respect to the back pay and the jury came up with a back pay amount. Then the judge made a separate determination with respect to front pay. Compare that to our case. These are state law claims. These state law claims allow for the award of future earnings. And so what we have here is a situation where we have Toitra essentially pursuing his future lost earnings as a component of those state law claims and the jury asked to make that determination. The part of what's going on here is that we have these state law claims that overlap with the ERISA claims, which usually we don't have because people argue that the state claims are preempted. But it seems like you never argued these state claims were preempted, and I'm wondering why. I don't have that answer. I don't know. That wasn't an issue that was raised before. But to the extent that there are these two remedies that we're talking about here, there certainly is this overlap and this potential for overlap. The consequence of which is if the jury made the determination as it was asked to make under Jury Instruction 9 that Toitra wasn't reasonably certain that he would have continued his employment in the future, then they fixed that amount of damages at that point in time. The judge can't, under the 7th Amendment, give a different remedy under an equitable claim under the ERISA statute. If, let's say, the jury made a determination that, yes, we think Toitra would have remained employed but for a limited period of time, then any additional front pay that's awarded goes beyond what the jury determined and that amount of front pay that was awarded overlaps with the jury's determination. So the jury here has already made its determination of what the complete make-whole damages are for Toitra. And what you have here is a court that essentially says, and I'm going to give you additional front pay for an unlimited period of time, there's no scope and time of the order, without any mitigation for what you indisputably are earning in a new position. And we briefed this to the court and we talked about the fact that this court in Cassino says, look, front pay has to include mitigation. It has to take into account. If it's indeterminate, but the way the judge did this here, he ordered reinstatement, the judge ordered reinstatement, but the front pay stops the moment there is reinstatement. It's a little different. It's a hybrid from the cases that you've cited, is it not? Well, here's the conflict I think that creates. Without a finding by the judge that reinstatement was possible, without making those two predicate findings that this position was available and that there was no hostility, without those findings, then what we have is a judge saying, we're going to have this front pay be a bridge until reinstatement can occur because the judge believes that reinstatement is possible. It doesn't make those findings, but believes that. So in that situation, this can go on indefinitely. And if the jury has already found, by way of its compensatory verdict, that Toycher would not have continued his employment with RSA, it wasn't reasonably certain, then what is he being reinstated to? A job the jury already said that he would not have continued to work at. Now, on the other hand, if what the court meant by this is, I don't think that reinstatement is possible, and under Pollard, I'm going to award front pay as an alternative to that,  He didn't make that finding. You cited Traxler. I'm looking at Traxler at 10-12 right now. I'm not finding what you talked about. I do see here that front pay is normally awarded if reinstatement is inappropriate. Correct. But is that what you're referring to, that section? Well, I think that what Traxler says and what it means to say there is, if you are going to award front pay, you have to make a finding. That's not what it says. Well, you have to say whether it's possible or not. Well, what it says is, if front pay is awarded, you only do that if reinstatement is inappropriate. That's not what happened here. The district judge found that reinstatement was appropriate, and as an incentive said, we're going to have front pay until you're reinstated. I think that what… That's not what Traxler's talking about, is it? Well, I think what's implicit in what Traxler's saying is you have to make a finding that reinstatement is feasible or not. You told us a minute ago that Traxler had a requirement that the district court find that the position was available and that reinstatement was possible. I'd be interested in knowing where you're saying that from because I'm looking at Traxler right now, and I don't see any such statement. Well, Your Honor, it's certainly not my intent to mislead the court. That's what my notes indicated in my read of Traxler was. You're suggesting that that's what we should draw from what the court said. You're not saying that the court said that, right? I think that I separately briefed that issue, and as I stand here that the Traxler case was the only case that I could recall. I believe that that's been included in my briefs, but I think also what Traxler's saying is if you're going to order reinstatement, you have to make a determination whether it's feasible or not. That's what I'm not seeing. What it talks about here is you don't order front pay if the court concludes that reinstatement is inappropriate. I see that. Right. Not the opposite. Well, in order for it to conclude that it's inappropriate, it'd have to consider those two factors, though, would it not? But it didn't find it was inappropriate here. What you're saying is that the court has to find that reinstatement was possible and list that out, and I'm not seeing that. Those are the two. Well, and again, as I stand here, I can't give you another citation. I know that I cited this in my brief, but the idea is that the court has to consider those two factors, the availability of a position because we do know as a matter of established law you cannot order reinstatement where the position is not available or where you'd have to displace current employees. So you'd have to make that finding in order to say it's feasible in the first place. If you want to save any of your time, you're down to 24 seconds. I would. Thank you, Your Honor. We haven't touched the cross peel yet. Thank you, Your Honor. Okay. Let's hear from the other side. Good morning, Your Honors. Daniel Stevens on behalf of Scott Plaitzer. As much as I would love to hear myself talk and all, I believe that I was going to make a point on the Trachler case, but I don't need to make that point anymore. Have you seen the Fifth Circuit decision in Garza that talks about a situation where a jury awards front pay and a judge decides to then award reinstatement and the Fifth Circuit says that violates the Seventh Amendment? I have not, although that would make some sense. In here, the evidence is pretty incontrovertible that the total amount the jury awarded was less than what the total amount of past economic loss, unfortunately, was less than the total amount of past loss economic damages. Therefore, I can't think that it's reasonable to conclude that the jury awarded future losses when, in fact, after all mitigations. But they were told to, right? So if they didn't, why don't we assume that they decided the future losses were zero? And why shouldn't we assume that your client elected to have a front pay remedy by giving that question to the jury? I think, in fact, they probably did conclude that front losses were zero. And so why isn't the court bound by that? I mean, under Dairy Queen and all the other Seventh Amendment cases, how is that not the end of the story here? Yeah, because I think the defenses are different. I think the defense to front pay normally would be, A, you failed to mitigate. This has been five, six, seven years, and you should have had a job paying this much. I run into that in so many of my trials where they say, You're making less, but you should be making more at this point. You should have gotten back on track in your career, so we're not going to give you any future losses. Reinstatement doesn't have that defense. Reinstatement merely says, Hey, you're supposed to be in that job, and we're going to put you back in that job. And it's because reinstatement is actually a stronger remedy than front damages because it's designed for both a detrimental effect and also to encourage people to make these types of claims. If companies believe that they can terminate somebody and they don't have to reinstate them, that's a lesser detriment than if they know they have to reinstate them. But can someone get front pay and reinstatement? I mean, is that ever possible? Those are inconsistent, right? You can't be reinstated and get the front pay. You would also get that job that you've been paid. I agree. If we wouldn't be here, we would have taken one or the other remedy, but we didn't get front pay from the jury. Right. Go ahead. I was going to say, but here we're talking about really a hybrid. The judge ordered reinstatement and said that until that occurred there was going to be front pay. What my colleague, I think, is saying is you can't contemporaneously have front pay and reinstatement. Is there any case that you can cite where we have the situation that we're dealing with here where the judge, in fact, ordered reinstatement and then said, you know, we want to be sure this happens here, so we're going to give you front pay until this occurs. It stops immediately when there's reinstatement, and the mitigation issue also trails that. I didn't find a case. I think probably what happens in most instances is either they do get reinstated immediately or, if they don't get reinstated immediately, they come back to court and get past damages, which would be now past losses instead of front pay. They'd be saying, hey, they didn't put me back to work for like six months and I should get that six months of damages. So in reality, is it really a front pay or is it just a bridge or a gap until the moment that they put them back into the position? And so I do see the point there that, yes, if it's reinstatement and front pay, the two things are incompatible. But in this instance, I believe, like you had said, that this is some kind of hybrid situation that doesn't occur very often. And, in fact, this is a temporary. You're not getting reinstatement and the front pay simultaneous. But once you've acknowledged that you can't have both front pay and reinstatement, let's treat what the district court did here in the equitable part as reinstatement. Let's say they actually did reinstate him in response to this. You had already submitted to the jury the issue of front pay and the jury made a determination. Now, you don't like that determination, but that determination included front pay as it was instructed to the jury. So how can you have front pay and reinstatement? That's what you have here. Well, it's an election of remedies. Yeah, so you elected the remedy by giving it to the jury and then you're done. Well, I think this is one court proceeding. The fact that the court did his determination after the jury, he was actually making his determination simultaneous. In other words, he watched the same trial and he makes his determinations. The fact that he didn't make it on the same day as the jury doesn't mean that it wasn't done in the same trial. But was there any indication prior to the jury determination that the jury determination would be advisory rather than binding? No. I just assume the court is going to do what the court does in a legal and equitable manner. But don't we have a lot of Seventh Amendment cases saying that the jury determination needs to be made first and then the equitable remedies are bound by what the jury did and the judge can't just do something equitable that conflicts with what the jury did. Well, I would agree if I thought that the equitable was subject to the same defenses. In this instance, it's not. And what case are you citing for the idea that that gets you out of the Seventh Amendment problem? I don't have a case that cites to that, unfortunately. I have a case that's what we cited in our brief and I haven't found anything new since then. Certainly, if somebody finds one, let me know. I mean, if you thought there were different defenses, then shouldn't you have said the jury should only do back pay because we have these equitable issues and we don't want to be bound by the jury determination? So it doesn't make sense to give front pay to the jury here. Yeah, we could have done that. It wasn't raised by the defense and certainly wasn't raised by the court. And that might have been something that we would have been amenable to at the time. But we're dealing with what actually happened. What actually happened was the jury didn't give any award for that. It's hard to know because it's a general verdict, so at some point you have to look at it and go, well, what did the jury determine? I don't know. But it does appear that they determined that they weren't giving front damages. And in that essence, like I said, they may have chosen that he didn't mitigate fairly. But at the same time, the judge is doing his issue, which is whether or not I'm going to give reinstatement, and reinstatement is subject to different defenses. Counsel, can I ask you, just on the mitigation point, let's assume that we were to hold that the front pay award is okay, notwithstanding the election of remedies concerns that Judge Friedland has raised. Don't we have to send it back for the district court to order the amount reduced by your client's current salary or whatever salary he was getting under Casino? I just thought that that seemed indisputable, that you're not entitled to get a front pay award for the full salary if you're actually working at another job, albeit making less, but that you have to subtract out that difference. Don't we have to at least do that? I don't think so. Certainly it can be argued the other way. I feel like in this instance... Why is your client entitled to a double recovery in essence? I don't get that. What legal principle allows that? There are situations where plaintiffs do get double recovery, such as when there's unemployment or something, and so they get an award and the unemployment isn't deducted from it. I think what you have to look at is, was this designed to make him whole? Is that why the judge did that? Or was this designed as a deterrent effect to make sure that they put him back in the position? Because if you think about it, what if he went on to get another job that made the same amount or more money, but he didn't like that job? He really would rather be back at the job that he was at. Well, if that's the case, there would be absolutely no damages and no incentive for the company to put him back into the position. So I think probably it was more of a deterrent effect or an encouragement to make sure they put him back in the position. I don't really cash to know is allowing the court to award punishment as a deterrent. I understand it to be an equitable remedy that's supposed to make you whole. I've never seen a case, but maybe you have one, where the plaintiff gets, in effect, a windfall, gets to collect the full salary that he used to be making plus the money from another job. That just doesn't even sound right as an intuitive matter. But you have a case that says that that's okay? No, I don't have a case that says that's okay. I'm just using parallel... Okay, well, let me ask you this. In addition, what bothers me about the district court's award, I think you're just wrong on this point, but is this just going to continue for life? Doesn't there have to be some kind of cap put on the amount of time that this front pay award is going to remain in existence? Because we now know, albeit maybe the district court didn't know at the time, but we now know that there is not going to be reinstatement, that that position no longer exists, and they're not going to put your client back into that position. So are they just supposed to pay him, you know, I would say just even... It would only be the difference between whatever he's currently making and his old salary, but they're supposed to pay that for the rest of his life? No. And you're making an assumption that that position is not available now. Had we been... Had they actually presented evidence at the time that the decision was being made, we would have had counter evidence that the position was available. But none of that's in evidence right now. Have they been paying the full amount? They have not paid anything. But right now we have no reinstatement and no front damages. It's on appeal, and nothing's been done. So we don't... We can't make the conclusion or the assumption that the position's not available. I believe they changed... Well, I won't say what I believe as to what happened because it's just not in the evidence in front of this court. Okay, so let me ask you this. The court... There's only one inference to be made, is that that reinstatement was possible. That was the court's finding. It's inherent in the fact that he ordered them to go back. There's never been a case out there that says that they have to make that ruling on the record. But I'll tell you, if there's no evidence to the contrary, certainly you can't go after a judge's ruling when there's... When he's ruling on something where there was no issue. There was no issue because there's no evidence. Don't we at least have to then... I mean, just based on what you've just said, don't we at least have to remand it back for the district court to, I guess, hear evidence on this point so that there's some kind of closure here? Because as things stand now, I guess your position would be that these front pay damages just continue to accrue indefinitely, right? Yeah. Forever, potentially. I think it would make sense. I wouldn't dispute that it would make sense to go back and determine now. I don't think that they can go back in time, but determine now if they want to make a showing, hey, look, we've closed shop. We're not even in business anymore. Yeah, that would make sense. I don't dispute that. Got it. Any other questions? All right, then I'll reserve whatever time I have left. Okay, thank you. Counsel, what are we going to do now? Are you going to do the cross appeal right now or what? I'd like to have a few opportunities at least for rebuttal on some of the argument that was made. Well, we've got 21 seconds left. We'll give you a little extra time, but we're not going to have a full-blown deal. You get to choose what you're going to do with your time. We'll give you, let's give him two minutes, and you've got to cover everything and all of that, please. Thank you. Okay, well, with respect to the issue of the need to go back, it's our position that there is no need for a remand here because, again, as Judge Friedland was saying, the jury has made a determination with respect to what is a made-whole remedy for torture here. They were asked to do that. They were asked to make the determination of his likelihood of future employment, and they came up with a number, and therefore there is a Seventh Amendment issue there. So there's no issue to send this back on any remand with respect to the front pay because he wasn't entitled to front pay. So from your perspective, what happens? You don't send it back? You just avoid the whole award? Is that what you're suggesting? That's correct because the jury has spoken under the Seventh Amendment. If the court disagrees and there isn't an issue of mitigation here, we agree that there is clearly an obligation to mitigate under casino and other cases from this circuit. I also heard that counsel said that nothing had been paid by RSA. I think he misspoke. The full judgment has been paid, including the compensatory and punitive damages. The only issue that remains unresolved is this front pay issue, and, of course, RSA is pursuing that on appeal. So the underlying judgment has been paid. This is a little bit of a hybrid because I think what the judge did here is use the front pay as a hammer to force reinstatement. I don't know of another case where it said that's okay. Typically these are alternative remedies, as the court mentioned, that they seem inconsistent. You can't have reinstatement and front pay. It's not a temporary bridge until that position can come open. It's a way of forcing RSA to reinstate this fellow. Now, with respect to the cross appeal, I guess since my time is limited, I'll submit on the briefs, but I would like to say this. Ultimately, it's the plaintiff's determination as to what attorney's fees he decides to pursue in this case. The plaintiff here decided not to pursue and waived any recovery of Woodson's fees, and I think that Woodson is bound by that. Thank you. Thank you. Are you making the response to counsel? Yes. Okay, very good. Come forward. I didn't know you were going to be here on this, but we'll give you a couple of minutes to respond. Are you the counsel of the person? I'm Bill Woodson. You are the person. I'm the very guy in pro per. You are what we call a real party in it. Well, may it please the court, yes, Bill Woodson and Judge Watford. Bill Woodson in pro per as former counsel. And I don't want to belabor the background, but the court knows there was substantial work that went into trial preparation. So can I ask you a question since we don't have a lot of time? Sure. Why didn't you try to intervene to file a cross-claim against your former client? And could you still? If we think you just messed this up and you've sued the defendants when you should have sued the plaintiff because you have a contract with the plaintiff and there would have been supplemental jurisdiction over that. I'm not sure why you didn't do that, and if we think that's what you should have done, can you still if we revand? I don't believe I want to. Why not? I never wanted to because I understood that while I had an absolute legal mandate to get out of a case, I didn't have a legal mandate or in my mind a moral right to try to deprive Mr. Teutcher of the right to take another shot at it to go to trial and see if he could. Right, but he did that. So now you can say that you had in quantum merit or in the contract or some way that you have a claim for all the work you did that eventually led to an award. So don't you have a cross-claim against him? I think I probably do, but I did not want and I do not to go after a client in state court. No, I'm saying do it in district court. Why didn't you intervene to cross-claim against him? I didn't want to get after him for this because I knew the work that these guys had done and his award really righteously belongs to them. They did the work. I did some work too, and I have a right to be paid for my work. But the way I read these cases, Your Honor, is that between Venegas and Varani, the Jerry Lewis Tuck case, I have a right to get the money from the one that… No, he does. The client has the right to get the money from them, but you then will have a claim against the client. And if you try to get the money from him, then maybe he'll get the money from them and he'll realize he better do it because otherwise you're going to get the money out of his pocket. Well, if that's all I'm left with, then that's all I'm left with. But I had a sense in my own heart that is not what I was going to do. Well, on that heartfelt moment, we thank you very much for your argument, for all counsel's argument. The case just argued is submitted, and the Court stands in recess for the day.
judges: M. Smith, Watford, Friedland